UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTHONY BASCLE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-9142** |
| **N. BURL CAIN, WARDEN** | **SECTION "F"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I.   Factual Background

The petitioner, Anthony Bascle ("Bascle"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] The record reflects that Bascle, and his co-defendants, Richard Bruches ("Bruches"),[3] and Emerson Simmons ("Simmons"), were longtime

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]Bruches's name is also spelled "Bruchis" in certain portions of the state court record. The Court will use the spelling appearing on the indictment to avoid confusion.

friends. On July 1, 1995, the three men forced their way into the home of the victim, Harry Heller ("Heller"), a lounge owner, then proceeded to rob and kill Heller.[4]

On September 14, 1995, Bascle, Bruches,[5] and Simmons,[6] were indicted by the grand jury in Jefferson Parish for the first degree murder of Heller and the aggravated burglary of Heller's residence.[7] The aggravated burglary count was eventually dismissed by the State on November 20, 1996.[8]

Prior to that, on September 20, 1995, Bascle was arraigned and entered a plea of not guilty to the charges.[9] Over the course of time, Bascle's attorney filed numerous motions, including a motion to exclude the inclupatory evidence on the grounds that it was not timely disclosed and to suppress the confession.[10] The Trial Court denied the motions.[11] Bascle filed an application for review of the denial of the motion to suppress the confession and restrict cross-examination of the

---

[4]St. Rec. Vol. 3 of 15, Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of Guilty Plea Form, 06/23/97.

[5]Bruches eventually entered a plea of guilty to accessory after the fact to first degree murder and was sentenced to serve 35 years in prison. *See* St. Rec. Vol. 1 of 15, Indictment, 9/14/95, and as amended, 11/13/97.

[6]Simmons was later tried by a jury and convicted of second degree murder and sentenced to life in prison. *See* St. Rec. Vol. 1 of 15, Indictment, 9/14/95, as amended, 9/3/97; *State v. Simmons,* 759 So. 2d, 940, ( La. App. 5th Cir. 2000); St. Rec. Vol. 3 of 15, Commitment Order Emerson Simmons, 09/18/97.

[7]St. Rec. Vol. 1 of 15, Indictment, 9/14/95; Grand Jury Return, 9/14/95.

[8]*Id*., handwritten notation dated 11/20/96.

[9]St. Rec. Vol. 1 of 15, Arraignment, 9/20/95.

[10]*Id*.

[11]St. Rec Doc. 2 of 15, Minute Entry, 2/19/97; *see also* St. Rec. Vol. 1 of 15, Minute Entry, 9/5/96; Minute Entry, 10/28/96; Minute Entry, 11/20/96.

defendant.  The Louisiana Fifth Circuit and the Louisiana Supreme Court denied the writ applications.[12]

Bascle's trial was called before the Court on June 16, 1997.[13] Prior to continuation of the jury selection on June 18, 1997, the state filed notices of intent to use and introduce evidence of statements from Richard Hingle, Richard Bruches, and Stephen Collet, regarding certain inculpatory statements made by Bascle on July 1, and 2, 1995.[14]

After commencement of the evidence, on June 21, 1997, the State disclosed that the co-defendant, Bruches, provided another statement indicating that Bascle had admitted to shooting Heller.[15] Bruches informed the State that Bascle admitted to being the person who pulled the trigger and shooting Heller in the back of his head, because Simmons did not have the stomach to do so.[16] The State argued that it had just received the statement a day earlier after court adjourned, and the issue was raised with the Court the next day.  The Trial Court, over the objection of defense counsel, ruled that the statement was admissible.[17] On June 22, 1997, Bascle sought review of that ruling and the related writ was denied by the Louisiana Supreme Court on June 23, 1997.[18]

---

[12]*State v. Bascle*, 692 So. 2d. 425 (La. 1997); St. Rec. Vol. 4 of 15, 5th Cir. Order, 97-K-338, 4/14/97.

[13]St. Rec. Vol. 2 of 15, Trial Minutes, 6/16/97.

[14]St. Rec. Vol. 3 of 15, Trial Minutes, 6/18/97; Notice of Intent to Use and Introduce Statement of Defendant as Evidence, 6/18/97.

[15]St. Rec. Vol. 3 of 15, Trial Minutes, 6/21/97; St. Rec. Vol. 4 of 15, Transcript of Proceedings, 6/21/97.

[16]St. Rec. Vol. 4 of 15, Transcript of Proceedings, 6/19/97; *see also*, St. Rec. Vol. 4 of 15, Transcript of Bruches's Statement, 7/13/95.

[17]*Id*.; St. Rec. Vol. 3 of 15, Trial Minutes, 6/21/97.

[18]*State v. Bascle*, 696 So.2d 982 (La. 1997); St. Rec. Vol. 15 of 15, La. S. Ct. Order, 97-KK-1667, 6/23/97; La. S. Ct. Writ Application, 97-KK-1667, 6/22/97.

Later that same day, June 23, 1997, Bascle withdrew his former plea of not guilty and entered a plea of guilty as charged to first degree murder.[19]  Bascle executed the Waiver of Rights Form on Entry of Guilty Plea acknowledging that he discussed the matter with his lawyer and was satisfied with his representation.[20]  He was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.[21]

Bascle's conviction became final five days later, on June 30, 1997.  *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); *see Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914[22]); *see also*, La. Code Crim. P. art. 13 (weekends and holidays not counted in periods of less than seven days).

---

[19]St. Rec. Vol. 3 of 15, Trial Minutes, 6/23/97; Plea Minutes, 6/23/97.

[20]St. Rec. Vol. 3 of 15, Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty, 6/23/97.

[21]St. Rec. Vol. 3 of 15, Plea Minutes, 6/23/97.

[22]The *Cousin* court recognized that the failure to move timely for appeal under La. Code Crim. P. art. 914 render the conviction and sentence final at the expiration of that period.  *State v. Counterman*, 475 So.2d 336, 338 (La. 1985). At the time of petitioner's conviction and the decision in *Cousin*, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment being appealed or of a ruling on a timely motion to reconsider a sentence.  Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

## II.   **Procedural History**

On March 20, 1998, Bascle filed a motion seeking copies of his *Boykin* and sentencing transcript.[23]  He also submitted and filed on June 1, 1998, a motion to compel certain other documents.[24] The Trial Court granted both motions on August 28, 1998.[25]

In the meantime, on August 14, 1998, Bascle filed an application for writ of mandamus seeking a ruling on his motions for transcripts and copies.[26]  After receiving confirmation that the transcript had been forwarded to Bascle, the Louisiana Fifth Circuit Court of Appeal denied the application.[27]

By letter dated January 4, 1999, Bascle requested that he be allowed to withdraw his guilty plea on the basis that he entered the plea because he feared for the safety of his family.[28]  By order issued April 27, 1999, the Trial Court construed the letter as an application for post-conviction relief and denied relief finding no basis under La. Code Crim. P. art. 559 to withdraw the plea.[29]

On June 8, 2000, Bascle submitted his second application for post-conviction relief, in which he asserted three grounds for relief:[30] (1) his plea was not freely and voluntary made, because he entered the plea believing that his wife and children would be in danger if the trial continued; (2)

---

[23]This motion is referenced in the Trial Court's order issued on August 28, 1998.

[24]St. Rec. Vol. 4 of 15, Motion to Compel, 6/1/98.

[25]St. Rec. Vol. 4 of 15, Trial Court Order, 8/28/98.

[26]St. Rec. Vol. 4 of 15, Letter from the Louisiana Fifth Circuit, 8/17/98.  The filing date of August 14, 1998, also appears on the Circuit Court's later-issued order.

[27]St. Rec. Vol. 4 of 15, 5th Cir. Order, 98-KH-863, 10/1/98.

[28]St. Rec. Vol. 5 of 15, Letter from Bascle to Judge Wicker, dated 1/4/99, received 1/7/99.

[29]St. Rec. Vol. 5 of 15, Trial Court Order, 4/27/99.

[30]St. Rec. Vol. 4 of 15, Application for Post-Conviction Relief, 6/14/00 (signed on 6/8/00).

5

the racially discriminatory selection of grand jury forepersons violated his constitutional rights; and (3) he was denied effective assistance of counsel.

The Trial Court denied the application finding no merit to the challenge to his plea or the claim of ineffective assistance of counsel.[31]  The Court denied relief on the grand jury issue finding that Bascle did not file a timely motion to quash the grand jury as required by La. Code Crim. P. arts. 521, 533, and 535.[32]

On September 5, 2000, the Louisiana Fifth Circuit denied Bascle's application for writ of review.[33]  On October 27, 2000, Bascle submitted an untimely[34] writ application to the Louisiana Supreme Court, which was denied without stated reasons on August 24, 2001.[35]

On November 21, 2005, Bascle submitted his third application for post-conviction relief in which he claimed that the prosecution withheld favorable, material evidence consisting of the witness statements made by Hamilton, Herty, Henricks and Dopp.[36]  Pursuant to the Trial Court's order, on March 16, 2006, the State filed a response to Bascle's application arguing that it should

---

[31] St. Rec. Vol. 4 of 15, Trial Court Order, 7/20/00.

[32] St. Rec. Vol. 4 of 15, Application for Post-Conviction Relief, 06/08/00.

[33] *State v. Bascle,* No. 00-KH-1500 (La. App. 5th Cir. 8/31/00) (unpublished decision).

[34] La. S.Ct. R. X § 5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment.  Bascle's application was not submitted within that period.

[35] *State ex rel. Bascle v. State*, 795 So. 2d 328 (La. 2001); St. Rec. Vol. 15 of 15, La. S. Ct. Order, 2000-KH-3069, 8/24/01; La. S. Ct. Writ Application, 00-KH-3069, 11/6/00 (postmarked 10/27/00).

[36] St. Rec. Vol. 8 of 15, Uniform Application for Post-Conviction Relief, 12/9/05 (signed 11/21/05).  Bascle's signature date will be presumed to be the earliest date on which he could have presented his pleading to prison officials for mailing to the state court under the applicable mailbox rule.  *See Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006); *accord*, *Marshall v. Cain*, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (mailbox rule controls under La. S. Ct. Rule X § 5).  According to Bascle's memorandum submitted to the state trial court, the statements in their totality showed that Emerson Simmons began planning to kill Harry Heller at least one and one-half months prior to the incident.  *Id*., p. 16.

be denied as untimely and successive, or alternatively because it lacked factual and legal merit because the statements did not change the voluntariness of his plea and were not exculpatory.[37] On March 27, 2006, the Trial Court denied the application finding that the claims were without merit.[38]

On April 5, 2006, the Court received a traverse from Bascle in response to the State's answer to his third application arguing that his application should not be dismissed as untimely.[39] The Court denied the request as repetitive.[40] Based on his motion filed April 11, 2006, the Trial Court granted Bascle until May 11, 2006, to file a writ application for review of its' order denying post-conviction relief.[41] On May 3, 2006, the Fifth Circuit denied Bascle's writ application finding no error in the Trial Court's ruling.[42]

On May 30, 2006, Bascle submitted a writ application which was filed in the Louisiana Supreme Court on August 25, 2006.[43] The Court denied the application without stated reasons on May 11, 2007.[44]

---

[37]St. Rec. Vol. 8 of 15, Trial Court Order, 1/3/06; State's Answer, 3/16/06.

[38]St. Rec. Vol. 7 (part 2) of 15, Trial Court Order, 3/27/06.

[39]The record does not contain a copy of the filed traverse. It is referenced in the Trial Court's subsequent order. St. Rec. Vol. 6 of 15, Trial Court Order, 4/24/06.

[40]St. Rec. Vol. 6 of 15, Trial Court Order, 4/24/06.

[41]St. Rec. Vol. 6 of 15, Trial Court Order, 4/18/06.

[42]St. Rec. Vol. 6 of 15, 5th Cir. Order, 06-KH-310, 5/3/06.

[43]St. Rec. Vol. 15 of 15, La. S. Ct. Writ Application, 06-KH-2140, 8/35/06 (dated 5/30/06, postmarked 8/22/06); St. Rec. Vol. 7 (part 1) of 15, La. S. Ct. Letter, 2006-KH-2140, 11/1/06.

[44]*State ex rel. Bascle v. State*, 955 So.2d 1275 (La. 2007).

### III.  The Federal Petition

On November 21, 2007, the Clerk of this Court filed Bascle's petition for federal habeas corpus relief, in which he raises two grounds for relief:[45] (1) his conviction was unconstitutional because the prosecution failed to disclose favorable evidence to the defense, namely witness statements from Hamilton, Herty, Hendricks, and Dopp; and (2) he was denied a full and fair hearing on his post-conviction claims in violation of his due process rights.

The State filed a response in opposition to Bascle's petition alleging that the petition was not timely filed and the equitable tolling doctrine does not apply.[46] Bascle filed a traverse in reply to the State's opposition arguing that he is entitled to equitable tolling, because his claim is based on newly discovered evidence and he is entitled to relief on the merits of his claims.[47]

### IV.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[48] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on October 22, 2007.[49] The threshold questions in habeas review under the amended

---

[45]Rec. Doc. No. 1.

[46]Rec. Doc. No. 9.

[47]Rec. Doc. No. 10.

[48]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[49]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Bascle's petition on November 21, 2007, when the filing fee was paid. Bascle's signature on the memorandum submitted with his form petition is dated October 22, 2007. This is the earliest date on which he could

8

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

In this case, the State raises the defense that Bascle's petition is not timely filed. The Court agrees and will address this defense.

## V.     Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[50] *Duncan v. Walker*, 533 US. 167, 179-80 (2001). As discussed above, Bascle's conviction became final on June 30, 1997, when he did not file a motion for appeal or seek reconsideration of his sentence.

---

have submitted the package of pleadings to prison officials for mailing. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

[50]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

Under the plain language of § 2244, Bascle had until June 30, 1998, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Bascle's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2)(2006). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings, which has been applied in the foregoing procedurally history. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.) (citing *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.

*Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds* by *Carey v. Saffold*, 536 U.S. 122 (2002) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).  Requests for document and transcript copies, like those filed by this petitioner, are not other collateral review for purposes of the tolling calculation.  *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

In this case, the one-year AEDPA filing period began to run on July 1, 1997, the day after Bascle's conviction became final.  The filing period ran uninterrupted for 365 days, until June 30, 1998, when it expired.  Bascle had no properly filed state post-conviction or other collateral review pending during that time.  As noted above, his transcript requests did not entitle him to tolling.

Bascle also argues to this Court that, while his application may be untimely considered from finality of his conviction, the limitations period should be equitably tolled until February of 2005 when he made a public records request from the district attorney's file which revealed several witness statements which he construes as exculpatory in nature and upon which he bases his federal claims. After he acquired the file, he contends that he promptly pursued post-conviction relief.[51]

According to Bascle, a total of 143 days lapsed between the time he received the information and the time he filed the subsequent state application for post-conviction relief.[52] Bascle contends that he timely sought review of the Trial Court's denial of his application through the appellate process such that only 301 days have lapsed from the time he discovered the evidence.[53]

The State argues in its opposition that the AEDPA limitations period should not be equitably tolled, because Bascle has not timely pursued post-conviction relief at any stage and the time Bascle spent waiting for his *Boykin* transcript did not toll the limitations period.[54]

The post-AEDPA jurisprudence provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

---

[51] Rec. Doc. Nos. 1, 10.

[52] *Id*., p. 11.

[53] *Id*., p. 12.

[54] Rec. Doc. No. 9.

In this case, Bascle alleges that he has newly discovered evidence which he contends demonstrates an extenuating circumstance warranting the extraordinary remedy of equitable tolling. Although he also uses the arguments for equitable tolling, Bascle is actually requesting that the limitations period not begin until discovery of his new evidence of his actual innocence in the form of the witness statements. Arguably, the Fifth Circuit has left open the possibility that "actual innocence may equitably toll the [AEDPA] statute of limitations." *Prince v. Thaler*, 354 Fed. Appx. 846, 847, 2009 WL 3806077 at *1 (5th Cir. Nov. 13, 2009). However, the "newly discovered evidence" referenced by Bascle does not undermine his guilty plea or his admission that he shot the victim.

Bascle was of course in the best position to know when he entered his guilty plea whether he or Simmons actually pulled the trigger or had planned to kill the victim in advance. He chose instead to enter a plea of guilty to a crime in which he does not deny being involved. While the statements of Dopp, Hendricks, Hamilton, and Herty indicated that Simmons wanted to bomb Harry Heller's car, Hendricks also saw Bruches, Simmons, and Bascle engaged in a conversation at Gilligan's Bar while all of the men held up guns. Dopp, who was Heller's neighbor, recognized Simmons when his photograph was shown on the news, because she had seen him in the neighborhood and she did not recognize Bascle.[55] These statements are not sufficient to suggest that the murder victim was shot by someone other than Bascle, as he admitted to doing. He has never denied being a principal to Heller's murder.

---

[55]St. Rec. Vol. 8 of 15, Statement of Marilyn Hamilton (7/14/95), Statement of Brandy Herty, Justin Hendricks (07/20/95), Statement of Dianne Dopp (7/25/95).

In fact, there were several other witnesses, namely, Spotville and Bruches, who statements were disclosed during the course of the trial.[56]  The state also indicated its intent to call additional inculpatory witnesses, Alan Brown and Stephen Collet.[57]  These witnesses, including co-defendant Bruches, were going to testify that Bascle admitted to them that he pulled the trigger to kill Heller.[58]

Further the record shows that the statements of Hamilton, Herty and Hendricks were disclosed by the State, because Bascle's counsel subpoenaed them as witnesses for the trial.[59]  Consequently, Bascle has not established that the statements from these witnesses were not known by or available to the defense prior to February of 2005.

For these reasons, Bascle has not established that he is entitled to equitable tolling of the AEDPA statute of limitations or that the trigger for the limitations period was any date other than the finality of his conviction in 1997.

Bascle's federal petition, deemed filed on October 22, 2007, was filed over nine years after the AEDPA filing period expired on June 30, 1998.  His federal petition must be dismissed as untimely filed.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Anthony Bascle's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

---

[56]*Id.*

[57]St. Rec. Vo. 3 of 15.

[58]St. Rec. Vol. 4 of 15, Transcript, Bascle Statement to Bruchis, 9/21/97.

[59]St. Rec. Vol. 6 of 15, Trial Court Order, Application for Post-Conviction Relief, 03/27/0; *see also* St. Rec. Vol. 3 of 15, Letters to Criminal Clerk, Division "B", 6/6/97 and 6/10/97.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[60]

New Orleans, Louisiana, this 30th day of December, 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[60] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.